UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HOWARD SCHMILL | CIVIL ACTION |
| VERSUS | NO. 21-1470 |
| METROPOLITAN LIFE INSURANCE COMPANY | SECTION M (3) |

# FINDINGS OF FACT & CONCLUSIONS OF LAW

Plaintiff Howard Schmill brought this action against defendant Metropolitan Life Insurance Company ("MetLife") seeking long-term disability ("LTD") benefits under a plan sponsored by his former employer Turner Industries Group, LLC ("Turner").[1] It is undisputed that the LTD plan is governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.[2] On February 1, 2022, this Court granted the parties' joint motion to submit the case for decision based on the administrative record and their written submissions, without the need for a civil trial.[3] Having considered the administrative record, the parties' memoranda, and the applicable law, the Court finds that there was substantial evidence in the administrative record to support MetLife's LTD benefits denial decision.[4] Consequently,

---

[1] R. Doc. 1.
[2] R. Docs. 1; 14.
[3] R. Doc. 16. When an ERISA case is submitted to the district court for decision based on the parties' memoranda and the administrative record, it is "essentially a bench trial 'on the papers' with the District Court acting as the finder of fact." *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003); *Batchelor v. Life Ins. Co. of N. Am.,* 504 F. Supp. 3d 607, 610 n.2 (S.D. Tex. 2020) ("Courts have noted that a trial on the papers under Rule 52(a) is effective in the ERISA context because courts may resolve factual disputes and issue legal findings without the parties resorting to cross motions for summary judgment."). Rule 52(a) of the Federal Rules of Civil Procedure, which governs actions tried on the facts without a jury, states that the district court "must find the facts specially and state its conclusions of law separately." A district court's findings are sufficient under Rule 52 if they provide "a clear understanding of the analytical process by which the ultimate findings were reached." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1053-54 (5th Cir. 1997) (quotation omitted). "Rule 52(a) does not require that the district court set out findings on all factual questions that arise in a case." *Id.* at 1054.
[4] Pursuant to Rule 52, the Court sets out its findings of fact and conclusions of law herein. To the extent a finding of fact constitutes a conclusion of law, the Court adopts it as such, and vice versa.

Schmill is not entitled to further LTD benefits, and judgment should be entered in favor of MetLife dismissing with prejudice all of Schmill's claims.

## FINDINGS OF FACT

**I. Jurisdiction and Venue**

1. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the claims asserted in the complaint, because they arise under federal law, specifically, ERISA, which provides federal courts with jurisdiction to review benefits determinations made by fiduciaries or plan administrators. *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 520-21 (5th Cir. 2000) (citing 29 U.S.C. § 1132(a)(1)(B)).

2. Venue is appropriate in the Eastern District of Louisiana under 28 U.S.C. § 1391.

**II. The Parties**

3. Schmill, an adult citizen of Louisiana, worked as a foreman at Turner and was eligible to participate in its employee welfare benefit plan titled Short Term Disability and Long Term Disability Coverage for Hourly Employees (the "Plan").[5]

4. MetLife administers the Plan for Turner.[6]

**III. The Plan**

5. The Plan provides that LTD benefits for disability due to mental or nervous disorders or diseases; neuromuscular, musculoskeletal, or soft tissue disorders; and chronic fatigue syndrome and related conditions are subject to a lifetime maximum equal to the lesser of (1) 12 months or (2) the maximum benefit period.[7]

---

[5] R. Doc. 1 at 1-2.
[6] *Id.* at 3. The Fifth Circuit has held that the plan administrator is a proper party defendant in an ERISA action. *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 845 (5th Cir. 2013).
[7] R. Doc. 17 at 56.

6. The mental or nervous disorder disease limitation excepts disability for bipolar disorder.[8]

7. "Mental or nervous disorder or disease" is defined as "a medical condition which meets the diagnostic criteria set forth in the most recent edition of the Diagnostic And Statistical Manual Of Mental Disorders as of the date of [the claimant's] Disability."[9]

8. The neuromuscular, musculoskeletal, or soft tissue disorder limitation includes "any disease or disorder of the spine or extremities and their surrounding soft tissue; including sprains and strains of joints and adjacent muscles, unless the Disability has objective evidence of … Radiculopathies."[10]

9. "Radiculopathies" is defined as "disease of the peripheral nerve roots supported by objective clinical findings of nerve pathology."[11]

**IV. Schmill's LTD Claim**

10. On February 21, 2019, Schmill injured his right shoulder while playing catch with his son, which resulted in surgery.[12]

11. MetLife paid short-term disability benefits to Schmill from March 8, 2019, through March 23, 2019.[13]

12. MetLife approved Schmill's LTD benefits claim related to the shoulder injury and surgery for the period of May 24, 2019, to May 23, 2020.[14]

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] R. Doc. 21 at 6.
[13] R. Doc. 20 at 6.
[14] *Id.*

13. On October 1, 2019, MetLife informed Schmill that his LTD benefits would expire on May 23, 2020, unless he provided medical information to support continued disability covered by the Plan.[15]

14. MetLife requested additional medical information from Schmill on November 21, 2019, December 20, 2019, January 14, 2020, and February 13, 2020.[16]

15. On March 23, 2020, MetLife informed Schmill that he was receiving LTD benefits associated with a neuromuscular-musculoskeletal or soft tissue disorder (*i.e.,* the shoulder injury and surgery) that is subject to the 12-month lifetime maximum. MetLife also informed Schmill that the medical information received regarding his reported bipolar disorder did "not support a psychiatric impairment of a severity to prevent you from returning to work" or impair normal daily activity. MetLife noted that "[t]he documented infrequency of following for psychiatric conditions are not consistent with a frequency and intensity expected in a severe, functionally debilitating, psychiatric condition."[17]

16. On April 23, 2020, MetLife informed Schmill that he had to meet the definition of disability as of May 23, 2020, to be eligible to continue receiving LTD benefits.[18]

17. On May 11, 2020, MetLife again notified Schmill that his LTD benefits would cease on May 23, 2020. MetLife recounted that on October 9, 2019, Schmill informed MeLife, that he had bipolar disorder. MetLife reviewed the notes from Schmill's healthcare providers regarding his bipolar diagnosis, including a behavioral health initial functional assessment completed by Hayley Folse, PMHNP, Schmill's primary mental health provider. MetLife's psychiatric clinical specialist opined that Schmill's medical records did not establish that he

---

[15] R. Doc. 17-2 at 134-36.
[16] *Id.* at 17-18, 60-61; R. Doc. 17-1 at 365-66, 398-99.
[17] R. Doc. 17-1 at 299-301.
[18] *Id.* at 248-49.

suffered from disabling bipolar disorder because he demonstrated improvement in his condition and denied "[m]ore serious and severe psychiatric symptomatology more reliably associated with psychiatric dysfunction."[19]

18.     On January 6, 2021, Schmill timely appealed MetLife's denial of his LTD benefits claim asserting that he was mentally and physically disabled from all gainful employment due to multilevel cervical spine degenerative disc disease, radiculopathy with bilateral upper extremity radicular symptoms, chronic right shoulder pain, type-2 diabetes, bipolar disorder, and obsessive-compulsive disorder. Schmill argued that his LTD benefits were not limited to 12 months because he had objective evidence of radiculopathy, particularly, a statement from his orthopedist, Scott Buhler, MD, that Schmill had bilateral upper extremity radicular symptoms and radiculopathy, along with MRI evidence of disc bulges, most significantly at the C4-5 and C5-6 levels. As to his bipolar disorder, Schmill cited a November 16, 2020 questionnaire completed by Folse stating that Schmill was unable to work due to mental health issues. Schmill also submitted a personal statement and a statement from his wife.[20]

19.     On July 16, 2021, MetLife informed Schmill that it had completed its review of his appeal and had:

> determined that [it was] unable to approve benefits on [Schmill's] claim beyond May 23, 2020 because Mr. Schmill's disabling conditions fall under the Mental or Nervous Disorder or Disease and Neuromuscular, musculoskeletal or soft tissue disorder limited benefit condition provision, for which Mr. Schmill has received the maximum benefits allowed per the Plan, which is [12] months,[21] with no additional benefits payable due to his diagnosis of depression, anxiety, rotator cuff tear and disc bulge. Based on Mr. Schmill's diagnosis of diabetes mellitus, this is a non-impairing condition and no restrictions or limitations are supported.[22]

---

[19] *Id.* at 242-44.
[20] R. Doc. 17 at 851-70.
[21] The letter recited 24 months, which the parties agree was a typographical error.
[22] R. Doc. 17 at 616.

20. MetLife's July 16, 2021 letter explained the history of Schmill's short- and long-term disability benefits claims, along with the steps it took in reviewing the denial of Schmill's LTD benefits claim during the appeal process. MetLife confirmed that it reviewed all information regarding Schmill's claim "including everything received prior to the initial decision as well as the information submitted on appeal," and had the entire file reviewed by three independent physician consultants ("IPCs") who were board certified in either psychiatry, family medicine, or orthopedic surgery.[23]

21. The psychiatry-certified IPC, Elbert Greer Richardson, MD, opined that, although Schmill's medical records indicate he was diagnosed with bipolar disorder and he self-reported mania, "there is no clear and convincing evidence to support this diagnosis," and there is "no evidence of independent assessment of psychological (or cognitive) functioning to clarify diagnostic impressions and treatment implications."[24] Further, Dr. Richardson opined that, although Schmill reported psychiatric symptoms that would limit him to part-time work, the documentation on file does not support a finding of psychiatric impairment – that is, symptoms of depression, anxiety, and ongoing poor frustration tolerance and personality pathology severe enough – as "would totally and indefinitely preclude all work activity."[25] Moreover, there is no documented evidence of "psychiatric treatment of a frequency or an intensity consistent with the presence of totally debilitating psychopathology," such as "referral to a higher level of psychiatric care," nor are there any "indicators of psychiatric severity that would warrant total occupational restrictions."[26] Further, there was no "clear and convincing evidence to support" the bipolar diagnosis because "manic episodes are not seen in serial exams and especially not seen during

---

[23] *Id.*
[24] *Id.* at 839.
[25] *Id.* at 837-38.
[26] *Id.* at 838.

visits where the claimant reports he is in a manic episode (thought process, speech, insight and judgment are unremarkable throughout for bonafide manic symptoms)."[27]

22. The family medicine-certified IPC, Mahdy Flores, DO, opined that, considering both the subjective and clinical information, Schmill did not have a medical condition or combination of conditions of such severity to warrant the placement of restrictions or limitations on his activities after May 24, 2020.[28] Dr. Flores noted that Schmill's type-2 diabetes mellitus is controlled with medication, which "does not translate into restrictions or limitations."[29]

23. The orthopedic surgery-certified IPC, Michael Chen, MD, opined that Schmill's file did not have "objective evidence of radiculopathy" on or around May 23, 2020, explaining:

> The [American Medical Association] Guides define radiculopathy as a "significant alteration in the function of a nerve root or nerve roots and is usually caused by pressure on one or several nerve roots." The most important clinical components required to support the diagnosis of a compressive radiculopathy include: [p]ain, numbness, and/or paresthesias in a dermatomal distribution; [a]n imaging study documenting correlating concordant nerve root pathology; and [a]ssociated clinical findings such as loss of relevant reflexes, muscle weakness and/or atrophy of appropriate muscle groups, loss of sensation in the corresponding dermatome(s).[30]

Further, Dr. Chen stated that the disc bulges reported on Schmill's referral MRI are not indicative of radiculopathy, and there was no cervical MRI report in the file, making it impossible to establish a radiculopathy diagnosis.[31] After reviewing additional information provided by Schmill's treating orthopedist, Dr. Chen maintained his opinion that there was "no evidence upon the cervical MRI to support the diagnosis of cervical radiculopathy," and "there remains no evidence of neural foraminal narrowing or encroachment on an existing or transiting nerve root."[32]

---

[27] *Id.* at 839.
[28] *Id.* at 798.
[29] *Id.* at 798-99.
[30] *Id*. at 804.
[31] *Id.*
[32] *Id.* at 617.

24. MetLife's July 16, 2021 denial letter noted that the three IPC reports authored by Drs. Richardson, Flores, and Chen were sent to Schmill's attorney in March 2021, so that Schmill's treating physicians would have an opportunity to comment. After Schmill's attorney requested and received several extensions, Dr. Buhler penned a June 9, 2021 letter indicating that Schmill continues to have pain and that further evaluation and treatment by pain management and rheumatology may benefit Schmill. Upon review of this information, Dr. Chen indicated that it did not change his mind concerning Schmill's claimed radiculopathy. Similarly, additional information provided to Dr. Flores did not suggest to him that Schmill had any medical condition of such severity to warrant restrictions or limitations based on his type-2 diabetes mellitus.[33]

25. On June 29, 2011, MetLife sent these IPC addendum reports to Schmill's attorney and gave Schmill's physicians until July 9, 2021, to comment. MetLife did not receive any comments or additional information.[34]

26. MetLife's July 16, 2021 denial letter concluded that after reviewing all of the evidence, including the IPC reports, the medical evidence did not support disability due to bipolar disorder or type-2 diabetes mellitus, and lacked objective evidence of radiculopathy.[35]

27. As of July 16, 2021, Schmill exhausted his administrative remedies.[36]

28. On August 3, 2021, Schmill filed this action against MetLife alleging that MetLife's arbitrary and capricious denial of his LTD benefits claim violated section 502(a)(1)(B) of ERISA (codified at 29 U.S.C. § 1132(a)(1)(B)). Schmill seeks a declaration of his continued

---

[33] *Id.* at 617-18.
[34] *Id.* at 618.
[35] *Id.*
[36] R. Doc. 1 at 3.

eligibility for LTD benefits under the Plan, payment of retroactive LTD benefits owed to him under the Plan, prejudgment interest, attorney's fees, and costs.[37]

## CONCLUSIONS OF LAW

### I. Standard of Review

1. The Fifth Circuit has stated the following standard of review for a challenge to an ERISA benefits decision:

> When an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion. For plans that do not have valid delegation clauses, the Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard."

*Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

2. The Plan delegates discretionary authority to MetLife as the plan administrator:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.[38]

3. Neither side argues that the delegation of authority is unlawful, and the Court is not aware of any reason to think so. Therefore, the abuse-of-discretion standard of review applies. *See High v. E-Sys. Inc.,* 459 F.3d 573, 576 (5th Cir. 2006) ("When, as here, the language of the plan grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion.").

---

[37] *Id.* at 4-5.
[38] R. Doc. 17 at 73.

4. Under the abuse-of discretion standard of review, a district court may consider only the evidence that was available to the plan administrator in determining whether the administrator abused its discretion in making its factual determinations on a plaintiff's benefits claim. *So. Farm Bureau Life Ins. Co., v. Moore*, 993 F.2d 98, 102 (5th Cir. 1993). In this case, that evidence is the administrative record, which was filed into the court record. *See* R. Doc. 17.

5. The district court may not substitute its judgment for that of the plan administrator and must uphold the plan administrator's decision if it is supported by substantial evidence. *Chapman v. Prudential Life Ins. Co. of Am.*, 267 F. Supp. 2d 569, 577 (E.D. La. 2003) (citations omitted). In this context, "[s]ubstantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004) (quotation omitted). "The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, *not* that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Id.* (emphasis in original). "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Id.* On the other hand, the plan administrator's decision is arbitrary if it lacks "a rational connection between the known facts and the decision or between the found facts and the evidence." *Corry v. Liberty Life Assur. Co. of Bos.*, 499 F.3d 389, 398 (5th Cir. 2007) (quotation omitted).

## II. Review of MetLife's Decision

6. MetLife's decision to limit Schmill's LTD benefits to 12 months is supported by substantial evidence found in the administrative record.

7.      It is undisputed that MetLife originally approved Schmill's LTD benefits for his shoulder injury and subsequent surgery, which injury is a neuromuscular, musculoskeletal, or soft tissue disorder for which LTD benefits are limited to 12 months.

8.      MetLife informed Schmill on numerous occasions that his LTD benefits would cease on May 23, 2020, unless he was able to satisfy the Plan's definition of disability in a way not subject to the lifetime maximum benefits limitation.  Schmill attempted to do so by claiming he had radiculopathy and bipolar disorder.  MetLife repeatedly requested supporting documentation for these claimed conditions.

9.      Schmill contends that he submitted sufficient evidence of radiculopathy, including (1) medical notes dated August 21, 2019, which reflect that he had decreased sensation in both legs and hands, along with numbness and tingling in his legs; (2) Dr. Buhler's December 11, 2020 note that Schmill had bilateral upper extremity radicular symptoms and radiculopathy; and (3) Dr. Buhler's May 4, 2020 note that Schmill had upper extremity tingling and numbness.  Schmill argues that these notes should be sufficient to prove radiculopathy because the Plan did not specify that medical imaging confirming radiculopathy was necessary, nor did the Plan define radiculopathy as a narrowing or encroachment on an existing or transiting nerve root.[39]

10.     MetLife considered Schmill's entire file, including the evidence of radiculopathy he cites, and it reasonably found that there was no objective evidence of radiculopathy as required by the unambiguous terms of the Plan.  The Plan expressly defines "radiculopathies" as "disease of the peripheral nerve roots supported by objective clinical findings of nerve pathology."[40] "Objective evidence" includes medical imaging such MRIs and x-rays. *See Trahan v. Metro. Life Ins. Co.*, 2016 WL 8252651, at *11 (W.D. La. Nov. 29, 2016), *adopted*, 2017 WL 561339 (W.D.

---

[39] R. Doc. 21 at 19-20.
[40] R. Doc. 17 at 56.

La. Feb. 9, 2017); *see also Schully v. Cont'l Cas. Co.*, 634 F. Supp. 2d 663, 682-83 (E.D. La. 2009) (noting that plaintiff submitted a "considerable amount of objective medical evidence in support of his physical disability [and] functional limitations" including multiple recent MRIs and a functional capacity examination ("FCE"))*, aff'd*, 380 F. App'x 437, 439 (5th Cir. 2010).

11. Schmill has not pointed to any objective evidence of his claimed radiculopathy in the administrative record. Dr. Chen noted that there were no imaging studies indicative of radiculopathy (*i.e.,* documenting nerve root pathology) in the record, and MetLife gave Schmill the opportunity to provide some, which he did not. Dr. Chen considered but dismissed Dr. Buhler's observations, to which Schmill points, for two principal reasons: first, Dr. Buhler's observations were based on Schmill's subjective reports of pain, as opposed to objective evidence like imaging studies; and second, the disc bulges revealed by the one MRI are not indicative of radiculopathy, and no imaging reflected the requisite nerve root pathology. Courts "consistently recognize that an insistence on objective evidence of restrictions and limitations is not arbitrary and capricious." *Adams v. UNUM Life Ins. Co. of Am.*, 2005 WL 2030840, at *32 (S.D. Tex. Aug. 23, 2005); *see also Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 230-31 (5th Cir. 2004) (upholding a plan administrator's denial of claim based on lack of objective evidence); *Richardson v. Metro. Life Ins. Co.*, 2014 WL 1050758, at *11 (E.D. La. Mar. 14, 2014) (holding that MetLife did not abuse its discretion in denying benefits where claimant did not provide results of an FCE or other tests that would confirm his subjective reports of pain or otherwise support the restrictions listed by his treating doctor). Thus, MetLife's conclusion that Schmill was not entitled to continued LTD benefits because the administrative record lacked objective evidence of radiculopathy was not arbitrary and capricious. Said another way, Metlife's determination was certainly supported by substantial evidence – that is, more than a scintilla – in the administrative record.

12. With respect to his bipolar disorder, Schmill argues that MetLife abused its discretion by ignoring the opinions of Folse, his treating nurse practitioner, and instead relying on its psychiatric IPC, Dr. Richardson.[41]

13. MetLife clearly considered Folse's opinions but found them wanting. Dr. Richardson acknowledged that Schmill was reportedly diagnosed with bipolar disorder, but he found that there was no evidence of *disabling* bipolar disorder. Under the Plan, a mental or nervous disorder or disease must meet "the diagnostic criteria set forth in the most recent edition of the Diagnostic And Statistical Manual Of Mental Disorders ["DSM"] as of the date" of the claimant's disability.[42] For a bipolar disorder diagnosis, the DSM-5 requires a manic episode – that is, an elevated, expansive, or irritable mood – lasting for at least one week and present most of the day, nearly every day, and including at least three of the following symptoms representing a significant change from usual behavior: inflated self-esteem or grandiosity; decreased need for sleep; increased talkativeness; racing thoughts; distracted easily; increase in goal-directed activity or psychomotor agitation; and engaging in activities that hold the potential for painful consequences, such as unrestrained buying sprees.[43] Dr. Richardson found that there was no evidence of manic episodes in Schmill's medical file, including Folse's notes, other than Schmill's own reports of them. Because Schmill's documented symptoms did not meet the DSM-5 definition of bipolar disorder, MetLife's decision to deny continuing LTD benefits based on a reported bipolar disorder diagnosis was not arbitrary and capricious. Bottom line, again, MetLife's decision was certainly supported by substantial evidence – that is, more than a scintilla – in the administrative record.

---

[41] R. Doc. 21 at 22-25.
[42] R. Doc. 17 at 56. The most recent edition is the DSM-5.
[43] Jessica Truschel, *Bipolar Definition and DSM-5 Diagnostic Criteria*, Psycom (Sept. 29, 2020), https://www.psycom.net/bipolar-definition-dsm-5.

14. Finally, Schmill argues that MetLife abused its discretion by failing to consider the compounding effects of all of his mental and physical conditions.[44] This argument misses the mark. Schmill's original LTD benefits claim related to his shoulder injury, which was subject to the 12-month lifetime maximum for neuromuscular disorders. MetLife consistently informed Schmill of this limitation period and the requirement that benefits could only continue after the limitation period if he otherwise satisfied the Plan's definition of disability. Schmill tried to do so by submitting information to MetLife in support of his claims of radiculopathy and bipolar disorder. After a full review of the administrative record and giving Schmill multiple opportunities to supplement the record, MetLife found those claims insufficient. Moreover, Dr. Flores reviewed Schmill's entire file and found that the subjective and clinical evidence does not suggest that Schmill suffers from a medical condition or combination of conditions of such severity to warrant the placement of restrictions or limitations on his activities beyond May 24, 2020. Thus, MetLife's decision was supported by substantial evidence and thus was not arbitrary and capricious.

## CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Schmill is not entitled to further LTD benefits.[45]

**IT IS FURTHER ORDERED** that judgment be entered in favor of MetLife and against Schmill dismissing with prejudice all of Schmill's claims against MetLife.

New Orleans, Louisiana, this 11th day of July, 2022.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[44] R. Doc. 21 at 23-24.
[45] Because Schmill is not entitled to further LTD benefits, the Court need not address his claim for attorney's fees and costs.